## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | )    No. 07 CR 565 |
| v. | ) |
| | )    Honorable Charles R. Norgle |
| ISAAC VASQUEZ | ) |

### OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the Court is Defendant Isaac Vasquez's Motion to Dismiss the Indictment

pursuant to FED. R. CRIM. P. 12(b)(2). The indictment charges the Defendant with failing to

register as a sex offender under the 2006 Sex Offender Registration and Notification Act, or

"SORNA," codified at 42 U.S.C. § 16912 et seq. The Defendant raises a variety of

constitutional and procedural challenges to SORNA, which the Court shall determine as a matter

of first impression. For the following reasons, the Defendant's motion is denied.

### I. BACKGROUND

#### A. FACTS

On October 28, 1998 Isaac Vasquez ("Vasquez") pleaded guilty in the Circuit Court of

Cook County, Illinois to "Predatory Criminal Sexual Assault of a Minor Under the Age of 13."

He was sentenced to six years imprisonment. On December 19, 2003, upon his release, Vasquez

registered as a sex offender pursuant to Illinois law. On August 22, 2004, Vasquez moved

residences in Illinois but failed to report a change of address. Authorities arrested Vasquez for

his failure to report a change in address, and thereafter he pleaded guilty to the charge and was

sentenced to one year imprisonment. On March 14, 2005, one day prior to his release, Vasquez

signed a notification form through which he acknowledged his duty to register as a sex offender

and that a failure to do so would constitute a criminal offense. Despite the notice, Vasquez failed to register upon his release.

After April 11, 2007, Vasquez left the Northern District of Illinois and traveled to California. Again, he failed to register as a sex offender. As alleged in the indictment, this took place "[f]rom on or about, May 2007, through on or about July 3, 2007." On or about July 3, 2007, United States Marshals arrested Vasquez in Los Angeles County, California. On February 5, 2008 the United States Attorney for the Northern District of Illinois filed a one-count indictment against Vasquez, charging him with a violation of 18 U.S.C. § 2250 for his failure to register as a sex offender and to update his registration in Illinois, after traveling in interstate commerce.

## B. PROCEDURAL HISTORY

On May 5, 2008 Vasquez moved to dismiss the indictment on five grounds. They are as follows:

(1) (a) Registration under SORNA violates the Defendant's Due Process rights because the statute makes it a crime to "knowingly fail to register or update a registration." Defendant's conviction occurred prior to SORNA's enactment, thus it was impossible for him to "knowingly" fail to register as required; otherwise, (b) SORNA violates the Tenth Amendment and (c) violates the Commerce clause;

(2) The indictment also violates the Defendant's Due Process rights by charging him with a crime for which he had no notice;

(3) SORNA's registration requirements are an unconstitutional exercise of Congress' authority under the Commerce Clause;

(4) (a) Congress violated the nondelegation doctrine when it delegated to the Attorney General the decision of whether SORNA would apply retroactively; and, nevertheless, (b) the Attorney General failed to abide by the Administrative Procedure Act when it determined SORNA's retroactivity; and

(5) (a) The indictment failed to allege the dates upon which the Defendant traveled; and (b) a prosecution pursuant to 18 U.S.C. § 2250 violates the *Ex Post Facto* clause of the Constitution because it imposes a more severe punishment on him than the law permitted at the time Vasquez committed the crime.

The motion is fully briefed and before the Court.

## II. DISCUSSION

### A. STANDARD OF DECISION

Vasquez's arguments are neither innovative nor unique. Although these arguments are a matter of first impression for this Court, District Courts throughout the United States have considered identical arguments to strike down SORNA and, for the most part, have rejected them. It has long been established that there is a presumption of constitutionality with regard to federal statutes. Bowen v. Kendrick, 487 U.S. 589, 617 (1988) (acknowledging the "traditional presumption in favor of the constitutionality of statutes enacted by Congress"). We recognize that it is preferable to interpret a statute so as to avoid constitutional problems, unless, of course, such a construction would abrogate Congress's intent. See Gonzalez v. Carhart, 127 S.Ct. 1610, 1631 (2007) (noting that every reasonable construction should be utilized to save a statute from unconstitutionality); Mistretta v. United States, 488 U.S. 361, 384 (1989) ("When this Court is asked to invalidate a statutory provision that has been approved by both Houses of Congress and signed by the President, […], it should only do so for the most compelling constitutional

reasons."); Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council, 485 U.S. 568, 575 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, [the statute should be construed] to avoid such problems unless such construction is plainly contrary to the intent of Congress."). And, to assail the presumption of constitutionality, the burden falls on the party seeking to establish as unconstitutional a particular federal statute. See Central States, Southeast and Southwest Areas Pension Fund v. Midwest Motor Express, Inc., 181 F.3d 799, 809 (7th Cir. 1999) (recognizing a "heavy burden of showing [a statute] to be unconstitutional"); Keith Fulton & Sons, Inc. v. New England Teamsters and Trucking Indus. Pension Fund, 762 F.2d 1124, 1129 (1st Cir. 1984) (noting that the burden to overcome the presumption of constitutionality falls on the one complaining of Congress's violation to "establish that the legislature has acted in an arbitrary and irrational way") (citing Ferguson v. Skrupa, 372 U.S. 726 (1963)); City of Louisville v. Babb, 75 F.2d 162, 165 (7th Cir. 1935) ("The burden of proof, where the constitutionality of a statute is in question, is always upon the party asserting the unconstitutional limitations of power...."). It is incumbent upon this Court to observe these tenets in deciding the Defendant's motion.

FED. R. CRIM. P. 12(b)(2) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." When considering a motion to dismiss under Rule 12(b)(2), a court assumes all facts in the indictment as true and must "view all facts in the light most favorable to the government." See United States v. Yashar, 166 F.3d 873, 880 (7th Cir. 1999). When viewed in that light, an indictment is sufficient if it satisfies three constitutionally-mandated requirements. United States v. Anderson, 280 F.3d 1121, 1124 (7th Cir. 2002). First, the indictment "must adequately state all of the elements of the crime charged; second, it must inform the defendant of the nature of the

4

charges so that he may prepare a defense; and finally, the indictment must allow the defendant to plead the judgment as a bar to any future prosecution for the same offense." Id. (citing United States v. Smith, 230 F.3d 300, 305 (7th Cir. 2000). Yet, the indictment "need not exhaustively recount the facts surrounding the crime's commission," United States v. Agostino, 132 F.3d 1183, 1189 (7th Cir. 1997), rather, when determining the sufficiency of the indictment, a court must look at the indictment's contents on a practical basis and in its entirety, not hypothetically. United States v. McLeczynsky, 296 F.3d 634, 636 (7th Cir. 2002) (citing Smith, 230 F.3d at 305). In addition, a court may dismiss an indictment "if it is otherwise defective or subject to a defense that may be decided solely on issues of law." United States v. Black, 469 F. Supp. 2d 513, 518 (N.D. Ill. 2006); United States v. Labs of Virginia, Inc., 272 F. Supp. 2d 764, 768 (N.D. Ill. 2003).

## B. THE ADAM WALSH ACT AND THE SEX OFFENDER REGISTRATION AND NOTIFICATION ACT

Title I of the Adam Walsh Child Protection and Safety Act of 2006 (the "Adam Walsh Act"), Pub. L. 109-248, §§ 1-155, 120 Stat. 587, 590-611 (2006) encompasses SORNA. It was signed and approved by the President on July 27, 2006. SORNA requires that each state and all other United States territories maintain a jurisdictional-wide sex offender registry that conforms to the registration guidelines that the statute sets forth. See 42 U.S.C. § 16912(a). Put simply, the statute created a nation-wide registry for sex offenders. Each state has three years from the statute's enactment, with possible extensions, to implement the new federal registry standards, or risk a reduction in federal grants. Id. §§ 16924(a), 16925(a).

Prior to the Adam Walsh Act, in 1994 Congress passed the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act ("Wetterling Act"), urging all states to adopt a national sex offender registry. Then, in 1996 Megan's Law amended the

Wetterling Act so that federal funding for state law enforcement initiatives became contingent upon the states' adoption of sex offender registration programs. Every state thereafter adopted some form of Megan's Law. See Smith v. Doe, 538 U.S. 84, 90 (2003). Illinois enacted its own "Sex Offender Registration Act" on August 15, 1986. 730 ILL. COMP. STAT. § 150/1 et seq.[1]

As to SORNA's registration requirements, those individuals who fall under SORNA's definition of "sex offender" are required to:

> [R]egister, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.

42 U.S.C. § 16913(a). And, for those offenders unable to comply with their initial registration because of the date of their convictions, SORNA conferred to the Attorney General the authority to determine SORNA's applicability to sex offenders convicted prior to the statute's enactment. Id. § 16913(d). On February 28, 2007 the Attorney General issued an interim rule on this issue, which provides that "[t]he requirements of the Sex Offender Registration and Notification Act apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of the Act." 28 C.F.R. § 72.3 (2007).

In the event a sex offender failed to register under SORNA, the statute's criminal counterpart, 18 U.S.C. § 2250, created a new federal offense that criminalized the failure to register and carried with it a maximum penalty of ten years imprisonment. The elements of the crime, generally, are that "the defendant (1) was required to register under SORNA; (2) traveled in interstate commerce; and (3) knowingly failed to register or update a registration as required

---

[1] The Illinois State Police administers an online, searchable database that lists the names and addresses of all sex offenders required to register in the State of Illinois. See Illinois Sex Offender Registration Information Website, available at http://www.isp.state.il.us/sor/ (last visited Sept. 18, 2008). The state's website also provides links to pertinent documents regarding sex offender registration, relevant legislation and education and safety. Id.

6

by SORNA." United States v. Hinen, 487 F. Supp. 2d 747, 750 (W.D. Va. 2007) (citing 18 U.S.C. § 2250). With this background in mind, the Court now turns to the sufficiency of the indictment.

## C. DUE PROCESS CLAIMS

Vasquez first argues that SORNA violates the principles of notice, fair warning and foreseeability contained in the Due Process Clause of the Fifth Amendment. The Due Process Clause provides that "[n]o person shall...be deprived of life, liberty, or property, without due process of law...." U.S. Const. amend V.; see Lambert v. California, 355 U.S. 225, 228 (1958) (acknowledging that due process questions arise where an individual, "wholly passive and unaware of any wrongdoing, is brought to the bar of justice for condemnation in a criminal case"). In support of this challenge, Vasquez maintains that SORNA should not apply to him because: (1) compliance with SORNA was impossible, since no state, including Illinois, has implemented the statute's requirements; and (2) he had no notice that he was required to register under SORNA, thus he could not "knowingly" fail to register as SORNA requires. The Court shall discuss each of these arguments in turn.

### 1. Impossibility

As to Vasquez's impossibility argument, it is undisputed that Illinois has maintained a sex offender registry that predates the period during which Vasquez is alleged to have traveled in interstate commerce. See 730 ILL. COMP. STAT. § 150/1 et seq. Compliance with SORNA does not require that sex offenders register in only those jurisdictions that have implemented SORNA's requirements. SORNA requires that Vasquez register and keep current his registration in those jurisdictions in which he resides, works or goes to school, or initially in the jurisdiction in which he is convicted – i.e. Illinois. 42 U.S.C. § 16913(a). And since Illinois

7

maintained a sex offender registry of its own, it was not impossible for Vasquez to register in Illinois simply because Illinois had not yet complied with SORNA. Vasquez knew of Illinois's requirements but nevertheless failed to register. Impossibility is not a defense to such a failure. See United States v. Brown, 2007 WL 4372829, at *4 (S.D.N.Y. Dec. 12, 2007) (rejecting the impossibility defense); United States v. Pitts, 2007 WL 3353423, at *7 (M.D. La. Nov. 7, 2007).

### 2. Notice

As to notice, Vasquez stresses that SORNA, by its express language, is a specific intent crime. And, because SORNA does not provide a reliable mechanism for providing offenders with notice, Vasquez claims that he could not be said to have "knowingly" failed to comply with its requirements. Vasquez emphasizes that he was never given actual notice of SORNA or of SORNA's registration requirements. On these grounds, Vasquez proposes that the Court dismiss the indictment. The Court declines to do so.

There is no dispute that Vasquez had ample notice of Illinois's registration requirements, as he signed a notification form in 2005 through which he acknowledged his duty to register as a sex offender and that a failure to do so would constitute a criminal offense. Despite signing this form, Vasquez failed to register as a sex offender. After that, he traveled to California. This is precisely the situation that SORNA is designed to curb. Such behavior and these circumstances are not akin to those in which a "wholly passive" individual is brought to justice, thereby implicating Due Process. Vasquez was neither passive nor ignorant of his duty to register as a sex offender. "[F]ew offenders have ever had relevant sections of the U.S. Code read to them before committing their crimes, yet they are expected to comply with it even so." United States

v. Roberts, 2007 WL 2155750, at *2 (W.D. Va. July 27, 2007).[2]  Moreover, a number of courts

have found notice satisfied with regard to federal registration law where a defendant had notice

of state registration requirements.  See, e.g., United States v. Dixon, 2007 WL 4533720, at *4

(N.D. Ind. Dec. 18, 2007) ("Mr. Dixon need not, to have committed the federal crime, have been

told by some official that he had to register pursuant to SORNA"); United States v. Hulen, 2007

WL 2343885, at *2 (W.D. Ark. Aug. 15, 2007); United States v. Gonzalez, 2007 WL 2298004,

at *2-4 (N.D. Fla. Aug. 9, 2007); Hinen, 487 F. Supp. 2d at 754; United States v. Roberts, 2007

WL 2155750, at *2 (W.D. Va. July 27, 2007); United States v. Templeton, 2007 WL 445481, at

*5 (W.D. Okla. Feb. 7, 2007) ("SORNA does not violate either procedural or substantive due

process").  The Court agrees with the reasoning in these cases and rejects Vasquez's Due Process

challenges to SORNA.  The motion to dismiss the indictment on Due Process grounds is

therefore denied.

## D. CHALLENGES UNDER THE COMMERCE CLAUSE & TENTH AMENDMENT

### 1. Commerce Clause

Vasquez next argues that SORNA is unconstitutional because it does not fall into any of

the three broad categories of activities that Congress is allowed to regulate under the Commerce

Clause.  Specifically, the Commerce Clause grants Congress the power "to regulate commerce

with foreign Nations, and among the several states."  U.S. Const. Art. I., § 8, cl. 3.  The power to

regulate commerce between the states is broken into three categories and includes the power to

regulate: (1) "the use of channels of interstate commerce;" (2) "the instrumentalities of interstate

commerce, or persons or things in interstate commerce, even though the threat may come from

interstate activities;" and (3) "those activities having a substantial relation to interstate

---

[2]  The court in Roberts went on to say, "Owners of firearms, doctors who prescribe narcotics, and purchasers of dyed
diesel are all expected to keep themselves abreast of changes in the law which affect them, especially because such
people are on notice that their activities are subject to regulation."  Roberts, 2007 WL 2155750, at *2.

commerce," or those that substantially affect interstate commerce. United States v. Morrison, 529 U.S. 598, 626-27 (2000) (holding the Gun-Free School Zone Act unconstitutional because it exceeded Congress's power under the Commerce Clause); United States v. Lopez, 514 U.S. 549, 558-59 (1995) (finding that certain sections of the Violence Against Women Act exceed Congress's authority under the Commerce Clause).

Relying on Lopez and Morrison, Vasquez claims that SORNA does not bear a sufficient nexus with interstate commerce, and thus it cannot fall into the third category of activities that Congress can regulate. Vasquez also contends that SORNA does not fall into the second category of activities because, despite § 2250's jurisdictional limitation, the presence of a jurisdictional element does not necessarily compel a finding that the statute complies with the Commerce Clause. Rather, Vasquez asserts that SORNA's jurisdictional element is lacking because it has no association to the crime committed. In support of this argument, Vasquez urges the Court to compare SORNA with the Travel Act, which requires a defendant to travel in interstate commerce "with [the] intent to" commit certain prohibited acts. Without this criminal connection, Vasquez says, SORNA does not properly regulate people or things in interstate commerce. The Court disagrees.

Congress built into SORNA a clear jurisdictional predicate. And when a jurisdictional predicate is present in a statute, the "substantially affects" test is inapplicable and the government need only show a minimal effect on interstate commerce. See United States v. Williams, 342 F.3d 350, 354-55 (4th Cir. 2003) (finding that the Hobbs Act's jurisdictional element requires only a minimal effect on interstate commerce); see also United States v. Jamison, 299 F.3d 114, 118 (2d Cir. 2002); United States v. Marrero, 299 F.3d 653, 654-656 (7th Cir. 2002); Hinen, 487 F. Supp. 2d at 758. Pursuant to 18 U.S.C. § 2250(a)(2)(B), SORNA's

reach is limited to an offender who is convicted under state law and who "travels in interstate or foreign commerce, or enters or leaves or resides in Indian country." Through this language, SORNA does not attempt to punish sex offenders for their failure to register in a particular state, which is, of course, a purely local act. On the contrary, federal jurisdiction exists under SORNA only if a sex offender, who is required to register in a particular state, travels to another state without having registered or without having updated his or her registration. The statute is tied directly to persons who travel across state lines, and also requires that those persons travel in interstate commerce before any criminal conduct may exist. This requirement differentiates SORNA from the statutes found in Lopez and Morrison. As a result, the statute satisfies the Commerce Clause so long as the activity it seeks to regulate has a *de minimis* effect on interstate commerce. See United States v. Juarez, 454 F.3d 717, 719 (7th Cir. 2006) (rejecting Lopez challenge to 18 U.S.C. § 922(g) because a jurisdictional element was present that required the gun to have been transported in interstate commerce); United States v. Akers, 2008 WL 914493, at *3 (N.D. Ind. Apr. 3, 2008) ("Congress has established a jurisdictional predicate of interstate or foreign travel, so [SORNA] requires only a *de minimis* effect on interstate commerce."). There is no question that the activity that SORNA regulates influences interstate commerce. SORNA relates to the travel of sex offenders across state lines. The statute's aim is to protect the public from sex offenders whose interstate travel may frustrate a state's ability to monitor that sex offender, as he or she may attempt to dodge the reporting requirements in other states. This type of travel has more than a *de minimis* effect on interstate commerce. Accordingly, SORNA is a proper exercise of Congressional authority under the Commerce Clause. Id.; (citing United States v. Dixon, 2007 WL 4553720, at *5 (N.D. Ind. Dec. 18, 2007)); United States v.

Cardenas, 2007 WL 4245913, at *12 (S.D. Fla. Nov. 29, 2007); Pitts, 2007 WL 3353423, at *4-5; United States v. Madera, 474 F. Supp. 2d 1257, 1265 (M.D. Fla. 2007).

### 2. The Tenth Amendment

Vasquez next challenges SORNA pursuant to the Tenth Amendment of the United States Constitution. On this point, Vasquez maintains that SORNA violates the Tenth Amendment because it commandeers state officials into enacting a federal law that has not yet been adopted. Printz v. United States, 521 U.S. 898, 935 (1997). Put another way, Vasquez argues that SORNA forces state officials to accept federally required sex offender registrations, immediately and without discretion, before state officials choose to voluntarily implement SORNA's provisions. Def.'s Br. at 9-10 (citing Printz, 521 U.S. at 935); see New York v. United States, 505 U.S. 144 (1992) (holding that Congress did not have the power to compel the states to enact a federal program requiring the states to dispose of toxic waste).

The Tenth Amendment provides that the "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. It is well-established, however, that "Congress may attach conditions to the receipt of federal funds, and has repeatedly employed the power 'to further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives.'" South Dakota v. Dole, 483 U.S. 203, 206 (1987) (quoting Fullilove v. Klutznick, 448 U.S. 448, 474 (1980)).

Vasquez's argument fails because SORNA does not force the States to do anything more than they have already done. Illinois, to repeat, has in place state registration requirements for sex offenders, 730 ILL. COMP. STAT. § 150/1 et seq., which have not changed since Congress enacted SORNA. The government seeks to prosecute Vasquez because he traveled in interstate

12

commerce, having failed to register under Illinois's pre-existing state registry. See Akers, 2008 WL 914493, at *4 (holding that SORNA "doesn't violate the Tenth Amendment by forcing the States to do more than already required under existing state registration laws.") (citing United States v. Utesch, 2008 WL 656066, at *14-15 (E.D. Tenn. Mar. 6, 2008)); see also United States v. Hacker, 2008 WL 312689, at *3 (D. Neb. Feb. 1, 2008) (holding that SORNA does not violate the Tenth Amendment). In fact, SORNA currently only requires that sex offenders register in those states that have pre-existing registries. Accordingly, SORNA's provisions in this instance do not violate the Tenth Amendment.

Moreover, as the Court explained above, SORNA is a valid exercise of Congress's authority under the Commerce Clause. Again, SORNA's interstate travel requirement offers a proper jurisdictional basis through which Congress can regulate sex offenders traveling from state to state. These registration requirements act upon the individual sex offender, not upon the States. As a result, there can be no violation of the Tenth Amendment because Congress acted under one of its enumerated powers when it enacted SORNA. See United States v. Wilson, 159 F.3d 280, 287 (7th Cir. 1998) ("[T]he Tenth Amendment and Article I of the Constitution are complements to one another; when Congress acts pursuant to an enumerated power, there can be no violation of the Tenth Amendment.") (citing United States v. Black, 125 F.3d 454, 462 (7th Cir. 1997)); accord United States v. Williams, 121 F.3d 615, 620 (11th Cir. 1997); Akers, 2008 WL 914493, at *4 ("Because SORNA doesn't run afoul of the Commerce Clause, Congress acted under one of its enumerated powers and hasn't impermissibly encroached upon state power."). The motion is therefore denied on these grounds.

### E. APPLICABILITY OF THE NONDELEGATION DOCTRINE

Vasquez further contends that SORNA violates the nondelegation doctrine by authorizing the Attorney General to specify the retroactive application of the statute's registration requirements. In support, Vasquez asserts that Congress failed to articulate any policies to guide the Attorney General in its task. Instead, Vasquez argues, "Congress gave the Attorney General the exclusive, unbridled discretion to determine who should be subject to SORNA and who should not," which constitutes an improper delegation of authority. The Court rejects this argument outright.

The Constitution provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." U.S. Const. Art. I, § 1. The Supreme Court has recognized, however, that Congress may obtain "assistance" from other branches or individuals, and "[s]o long as Congress 'shall lay down by legislative act an intelligible principle to which the person or body authorized [to exercise the delegated authority] is directed to conform, such legislative action is not a forbidden delegation of legislative power.'" Mistretta v. United States, 488 U.S. 361, 372 (1989) (quoting J.W. Hampton Jr., & Co. v. United States, 276 U.S. 394, 406 (1928)).

In this case, a plain reading of the statute demonstrates that Congress delegated to the Attorney General a limited duty that comes into play under narrowly-defined circumstances. Specifically, the Attorney General's authority applies to the "initial registration of sex offenders unable to comply with subsection (b) of [§ 16913]." And, as to that narrow set of individuals, Congress only authorized the Attorney General to decide the statute's retroactive application. This is not the "unbridled discretion" that Vasquez suggests. Rather, Congress gave the Attorney General a clear and intelligible duty to act with regard to a narrow set of individuals, which it specifically defined in the statute.

Congress's delegation of authority in this case is incongruous to that found in A.L.A. Schechter Poultry Corp. v. United States, 295 U.S. 495 (1935) and Panama Refining Co. v. Ryan, 293 U.S. 388 (1935), in which the Supreme Court struck down the challenged statutes on delegation grounds. In those cases, Congress failed to articulate any standards that would confine the delegated authority, and thus the branch to which Congress conferred the authority could, as it turned out, impose its own conditions or add to and take from what was proposed to effectuate Congress's policies. See Schecter, 295 U.S. at 538-39. Such a delegation was of more than a mere decision. Instead, Congress delegated its entire set of functions so that the chosen branch could prescribe as it saw fit the policies that Congress sought to instill. Id.; Panama Refining Co., 293 U.S. 388 at 430 ("As to the transportation of oil production in excess of state permission, the Congress has declared no policy, has established no standard, has laid down no rule. There is no requirement, no definition of circumstances and conditions in which the transportation is to be allowed or prohibited."). Nothing of the sort is present in this case. Indeed, since Schecter and Panama Refining Co. came down, the Supreme Court has upheld across the board statutes authorizing broad functions on behalf of administrative bodies and other branches of government.[3] This case presents a much narrower example. Congress's delegation in SORNA, as set forth above, is sufficiently specific and detailed so that it is not so broad as to be violative of the non-delegation doctrine. On this issue, the motion is denied.

---

[3] The Supreme Court admitted in Mistretta that since its 1935 decisions in Schechter and Panama Refining Co., the Court has upheld, "without deviation, Congress'[s] ability to delegate power under broad standards." 488 U.S. at 373 [internal citations omitted]. In fact, the Court noted that "[i]n recent years, [the Court's] application of the nondelegation doctrine principally has been limited to the interpretation of statutory texts, and, more particularly, to giving narrow constructions to statutory delegations that might otherwise by thought to be unconstitutional." Id. at 373 n.7.

## F. THE ADMINISTRATIVE PROCEDURES ACT

Vasquez also contends that the Attorney General's interim rule with regard to SORNA's retroactivity violates the Administrative Procedures Act ("APA"), 5 U.S.C. § 553, by virtue of its promulgation without notice and comment. As the Defendant points out, the APA generally requires agencies to publish a proposed rule in the Federal Register and to give interested parties the opportunity to submit comments and other relevant material before the rule becomes effective. 5 U.S.C. § 553(d). Yet, built into the APA is an exception to the notice and comment requirement, which allows the agency to forego notice and comment when it is "impractical, unnecessary, or contrary to the public interest." 5 U.S.C.. § 553(b)(3)(B). Recognizing this, the Attorney General issued the following statement with SORNA's interim rule:

> Delay in the implementation of this rule would impede the effective registration of such sex offenders and would impair immediate efforts to protect the public from sex offenders who fail to register through prosecution and the imposition of criminal sanctions. The resulting practical dangers include the commission of additional sexual assaults and child sexual abuse or exploitation offenses by sex offenders that could have been prevented had local authorities and the community been aware of their presence, in addition to greater difficulty in apprehending perpetrators who have not been registered and tracked as provided by SORNA. This would thwart the legislative objective of "protect[ing] the public from sex offenders and offenders against children" by establishing "a comprehensive national system for the registration of those offenders," SORNA § 102, because a substantial class of sex offenders could evade the Act's registration requirements and enforcement mechanisms during the pendency of a proposed rule and delay the effectiveness of a final rule.

> It would be accordingly contrary to the public interest to adopt this rule with a prior notice and comment period normally required under 5 U.S.C. 553(b) or with the delayed effective date normally required under 5 U.S.C. 553(d).

72 Fed. Reg. 8894, 8896-97 (2007) (quoting 42 U.S.C. § 16901). Upon review of the Attorney General's statement, the Court finds that "good cause" exists for its choosing not to comply with the APA's notice and comment requirements. Implicit in the Attorney General's statement is the concern for public safety and the risks involved in the event local authorities and the community

16

are not aware of sex offenders' presence. Vasquez's arguments to the contrary are unsupported and purely speculative, which is insufficient to overcome the Attorney General's reasons. Accordingly, the Court finds that there is no violation of the APA.

## G. VALIDITY OF THE INDICTMENT

For his final argument, Vasquez claims that the indictment is invalid because it failed to allege the date on which he traveled in interstate commerce. Specifically, Vasquez maintains that the indictment is silent as to the exact date that he traveled to California, which is crucial according to Vasquez because he could not have known that SORNA applied to him before February 28, 2007, the date the Attorney General determined that SORNA would apply retroactively. Thus, according to Vasquez, if he traveled in interstate commerce prior to February 28, 2007, his failure to register is excused. The Court finds this argument unavailing.

First, the indictment here alleges that Vasquez failed to register as a sex offender and traveled in interstate commerce "on or about May 2007 to July 3, 2007." The indictment clearly informs Vasquez of the offense with which he is charged and sets forth a time period during which the offense occurred. This Court recognizes that when the government alleges that an offense occurred "on or about" a certain date, the defendant is thereby put on notice that the charge is not limited to a specific date or dates set out in the indictment. See United States v. Thomas, 520 F.3d 729, 734 n.1 (7th Cir. 2008); United States v. Reed, 887 F.2d 1398, 1403 (11th Cir. 1989). As such, it is not fatal to the indictment that it contains a general reference to a range of dates, and not just one, specific date.

Moreover, if Vasquez was required to register as a sex offender prior to SORNA's enactment, then SORNA became applicable to him on July 27, 2006, when it was enacted by Congress, not when the Attorney General made the statute retroactive. In this case, Vasquez

17

acknowledged in writing his obligation to register as a sex offender on March 14, 2005. Thus, SORNA's enactment on July 27, 2006 clearly provided him with notice that his state requirement now fell within the federal statute's purview. As a result, even if the Court accepted Vasquez's contention that SORNA was only applicable to him after February 28, 2007, he still would be in violation of SORNA if he traveled or relocated to California on any dates between February 28, 2007 and July 3, 2007. See Ambert, 2007 WL 2949476, at *4. This is precisely what the indictment alleges. The Court therefore finds no reason to dismiss the indictment on this basis.

## H. *EX POST FACTO* CONCERNS

While attacking the validity of the indictment, Vasquez argues in passing that it is a violation of the *ex post facto* clause of the Constitution to prosecute him for travel that occurred before February 28, 2007, because the statute "imposes a more severe punishment on him than the law permitted at the time it was committed." Def.'s Mot. at 22. Defendant's *ex post facto* argument is largely undeveloped, except to say that no laws existed prior to February 28, 2007 that subjected Vasquez to a 10-year punishment for failing to register as a sex offender. This argument fails for a number of reasons.

*Ex post facto* implications arise where a statute inflicts greater punishment upon a defendant than the punishment provided for when that defendant was originally convicted of the crime. See United States v. Hinden, 487 F. Supp. 2d 747, 755 (W.D. Va. 2007) (citing Calder v. Bull, 3 U.S. (3 Dall.) 386, 390 (1798)). The constitutional prohibition on *ex post facto* laws, however, applies only to penal statutes which disadvantage the offender affected by them. Collins v. Youngblood, 497 U.S. 37, 41 (1990). Thus, in this case, we must determine whether 18 U.S.C. § 2250(a) constitutes a penal statute. The Supreme Court's decision in Smith v. Doe,

538 U.S. 84 (2003) is instructive. There the Supreme Court set forth a two-part inquiry to

determine whether Congress, when enacting a statute, meant to establish "civil proceedings" or

to impose a punishment. Id. at 85 (citing Kansas v. Hendricks, 521 U.S. 346, 361 (1997)). In

doing so, the Supreme Court stated:

> If the intention was to impose punishment, that ends the inquiry. If, however, the
> intention was to enact a regulatory scheme that is civil and nonpunitive, the Court
> must further examine whether the statutory scheme is so punitive either in
> purpose or effect as to negate the State's intention to deem it civil.

Smith, 538 U.S. at 85 [internal citations omitted]. The Supreme Court went on to say that

because it generally defers to the legislature's stated intent, "only the clearest proof will suffice

to override that intent" and transform a civil remedy into a criminal penalty. Id.

Under this construct, the Court shall first decide whether Congress intended a civil,

nonpunitive scheme when it enacted § 2250(a) and SORNA. On this point, we first look to the

statute's plain text. There, in SORNA's "Declaration of Purpose," Congress declared that:

> In order to protect the public from sex offenders and offenders against children,
> and in response to the vicious attacks by violent predators against the victims
> listed below, Congress in this chapter establishes a comprehensive national
> system for the registration of sex offenders.

42 U.S.C. § 16901. This declaration, standing on its own, confirms the statute's civil purpose.

Congressional intent is clear. In addition, upon review of SORNA and the Walsh Act as a

whole, there is nothing to suggest that Congress's "Declaration of Purpose" is only a pretext

meant to impose an additional layer of punishment for sex offenders across the country. See

United States v. Pitts, No. 07-157, 2007 WL 3353423, at *6 (M.D. La. Nov. 7, 2007) (noting

with respect to SORNA that Congress clearly intended a civil regimen and that nothing in it

suggests that the statute was intended to be anything else). SORNA, in short, is a safety

measure, and the face of the statute "evidences no desire by Congress to simply exact

punishments against sex offenders." Hinden, 487 F. Supp. 2d at 755. The Defendant offers nothing to support a different interpretation.

Furthermore, it is noteworthy that SORNA is codified in Title 42 of the United States Code, which administers those provisions that relate to public health and welfare. Smith, 538 U.S. at 94 (considering as a factor the placement and labels of a statutory provision to determine whether it was intended as a nonpunitive regulatory measure). SORNA encompasses the majority of the statute's provisions, as opposed to § 2250, SORNA's criminal counterpart, which Congress placed in Title 18. The Court finds, then, a declared, clear and strong showing that Congress sought to create, with public safety at its core, a civil and non-punitive registration system.

Having determined that Congress intended a civil scheme, the Court must next examine SORNA's effects and determine whether those effects are so punitive as to negate Congress's civil intent. The Court finds that they are not. There are seven factors that courts must consider when analyzing the punitive nature and effects of a federal statute. Smith, 538 U.S. at 97 (applying Kennedy v. Mendoza-Martinez, 372 U.S. 144, 169 (1963) ("Absent conclusive evidence of congressional intent as to the penal nature of a statute, these [seven] factors must be considered in relation to the statute on its face.")). These factors are: (1) whether the sanction involves an affirmative restraint; (2) whether it has been historically regarded as a punishment; (3) whether it is tied only to a finding of scienter; (4) whether its operation promotes retribution and deterrence; (5) whether it applies to criminal behavior; (6) whether it is rationally connected to a nonpunitive purpose; and (7) whether it appears excessive in relation to the alternative purpose. Id. at 168-69. It is important to remember, however, that these factors are neither exhaustive nor dispositive, but serve only as "useful guideposts." Hudson v. United States, 522

U.S. 93, 99 (1997); United States v. Ward, 448 U.S. 242, 249 (1980). As in Smith v. Doe, in which the Supreme Court examined a similar statute being challenged as violative of the *ex post facto* clause, the Court recognizes that the factors most relevant to this analysis are whether "the regulatory scheme: has been regarded in our history and traditions as punishment; imposes an affirmative restraint; promotes the traditional aims of punishment; has a connection to a nonpunitive purpose; or is excessive with respect to this purpose." Smith, 538 U.S. at 97.

As to the first factor, the requirements under SORNA are new and thus cannot be viewed, either traditionally or historically, as punishment. United States v. Pitts, 2007 WL 3353423, at *6. SORNA disseminates truthful information in furtherance of a legitimate governmental objective. This does not constitute a punishment. Smith, 538 U.S. at 98, 99. On the second factor, regardless of how the Defendant perceives SORNA's objectives, the statute does not subject sex offenders to affirmative restraint. SORNA neither imposes physical restraint, nor provides an affirmative disability. Id. at 100 (citing Hudson, 522 U.S. at 104). SORNA, quite simply, is a means to provide notice to the public through the maintenance of a national registry for sex offenders. The end goal, as evidenced by the statute's express terms, is not to send sex offenders to prison. Any imprisonment in this case is merely incident to public safety and protection, and "[w]here a legislative restriction is an incident to the State's power to protect the public health and safety, it will be considered as evidencing an intent to exercise that regulatory power, and not a purpose to add to the punishment." Smith, 538 U.S. at 85 (citing Flemming v. Nestor, 363 U.S. 603, 616 (1960)). As to the third factor, there is nothing to support the notion that SORNA promotes the traditional aims of punishment. On the contrary, according to its plain language, Congress did not design SORNA to harass or embarrass sex offenders, but instead sought to notify the public, for its own safety, of an offender's presence, in light of the

21

numerous attacks committed by career offenders. SORNA is not designed to punish but to protect. On the fourth factor, the Court finds that the statute has a close connection to a nonpunitive purpose – public safety – which "is advanced by alerting the public to the risk of sex offenders in their community." Smith, 538 U.S. 102-03. Finally, SORNA is not excessive in relation to its purpose.

Every state has invoked a similar regulatory scheme. The federal statute at issue here does not enhance the states' registration requirements, but merely establishes a national system of registration. Accordingly, there is nothing to suggest that SORNA imposes obligations on offenders that are excessive in light its clear Congressional goals. The means that Congress chose in this instance is, in fact, reasonable, and the effects of SORNA are not so punitive in purpose as to negate Congress's intent. See United States v. Gill, 520 F. Supp. 2d 1341 (D. Utah 2007) (holding SORNA's purpose was not to punish offenders but to inform the public about the offender's background); Hinen, 487 F. Supp. 2d at 755-56 (finding that Congress's purpose was to establish a comprehensive national system for registration of sex offenders so as to protect the public); Madera, 474 F. Supp. 2d at 1264 (concluding that SORNA doesn't violate the ex post facto clause). For these reasons, SORNA does not violate the *ex post facto* clause, and the motion is therefore denied on this point.

### III. CONCLUSION

For these reasons, Defendant Isaac Vasquez failed to meet his heavy burden to overcome the presumption of SORNA's constitutionality. Vasquez's Motion to Dismiss the Indictment is therefore denied.

IT IS SO ORDERED.

ENTER:

CHARLES R. NORGLE, Judge
United States District Court

DATED: 9/22/08